**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RUSSELL ALLEN PASSONS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-CV-281-JHP-TLW |
| ) | |
| **OSAGE NATION GOVERNMENT; et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

This is a civil action commenced by Plaintiff, an inmate in custody of the State of Idaho and appearing pro se. On July 14, 2014, Plaintiff filed his amended complaint (Dkt. # 8). Plaintiff is a member of the Osage Nation, see Dkt. # 1 at 75, and claims he is entitled to receive his share of headright interests of deceased relatives. Before the Court are Defendants' motions to dismiss (Dkt. ## 33, 42). For the reasons discussed below, Defendants' motions are granted.

*BACKGROUND*

In his original complaint, Plaintiff stated that "[t]his is a § 1983 action filed by Plaintiff Russell Allen Passons an enrolled member of the Osage Nation Tribe of Indians, alleging violation of his constitutional rights to receive administrative determination and property of mothers [sic], grandfathers, all listed decendants [sic], estates, in trust within the Osage Nation[']s government, and the Department of the Interior." See Dkt. # 1 at 17. In a prior Order (Dkt. # 5), the Court advised Plaintiff that his complaint was subject to being dismissed without prejudice because none of the defendants identified by Plaintiff is a state actor and none acted under state law in allegedly violating Plaintiff's constitutional rights, as required to state a claim under 42 U.S.C. § 1983. Plaintiff was afforded the opportunity to file an amended complaint. Id.    In his amended complaint

(Dkt. # 8), Plaintiff alleges jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1346, 1357, 2415(c); 5 U.S.C. § 702; and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Plaintiff claims that on August 10, 1991, in Bullhead City, Arizona, his mother, Patricia Ann (St. John) Passons, told him that "she was leaving her Osage mineral estate interest to me when she passed away!"[1] (Dkt. # 8 at 21). Plaintiff further claims that, on June 4, 2012, he learned that his mother had passed away almost ten (10) years earlier, on September 27, 2002. Id. at 22. He complains that he was not notified of the probate of her estate, nor of the probate of his "lineal decendants [sic]" estates. Id. Thus, he brings this action to recover, inter alia, "lost mineral interest assets." Id. at 39.

In response to the amended complaint, Defendant Osage Nation Government and the federal defendants filed motions to dismiss. (Dkt. ## 33, 42). After receiving lengthy extensions of time, Plaintiff filed a response (Dkt. # 51). He also filed a motion to amend (Dkt. # 52), seeking to add new defendants and additional bases for the Court's jurisdiction. He enclosed his proposed amended complaint along with his motion to amend. Id. The federal defendants filed a response in opposition to the motion to amend (Dkt. # 54).

---

[1]Plaintiff does not claim that his mother executed a will, in accordance with the laws of the State of Oklahoma, reflecting her intentions. See Section 5(a), Osage Indian Act of 1978, Pub. L. 95-496, 92 Stat. 1660. Under Section 5(a), "[a]ny person of Osage Indian blood, eighteen years of age or older, may dispose of his Osage headright or mineral interest . . . by will executed in accordance with the laws of the State of Oklahoma: Provided, That the will of any Osage Indian shall not be admitted to probate or have any validity unless approved after the death of the testator by the Secretary of the Interior." Id. Once approved by the Secretary of the Interior, the will of an Osage Indian is admitted to probate in the "District Court of the State of Oklahoma having jurisdiction." 92 Stat. at 1661.

For the reasons discussed below, the Court grants the motions to dismiss. Plaintiff's second motion to amend is futile and, for that reason, is denied.

## *ANALYSIS*

The leading commentary on Federal Indian Law summarizes the law applicable to succession by inheritance and devise of headrights, as follows:

> In 1872, Congress confirmed to the Osage Nation a reservation in the Indian Territory. Around the turn of the twentieth century, the Osage Nation quickly accumulated a large tribal trust fund from substantial discoveries of oil and gas and other sources. Tribal wealth made the Osages targets of various forms of fraud and overreaching.
>
> In 1906, the Osage Act severed the surface and mineral estates, established a system of per capita distribution of most tribal income, allotted much of the surface of the reservation, authorized certificates of competency for individual Osages, and subjected Osage property to certain state laws. The mineral estate of the reservation was severed from the surface, and the entire mineral estate was retained in trust for the tribe. In many respects the mineral estate resembles property held in trust for other tribes: leasing requires the approval of the tribe and the Secretary of the Interior, some of the mineral income is used for tribal purposes, and the federal government has fiduciary obligations to the tribe. Mineral leasing is governed by special statutes and regulations rather than the general Indian mineral leasing laws, however.
>
> Most of the income from the tribal mineral estate, as well as most tribal income from other sources, is paid per capita to persons on the 1906 Act membership roll or their heirs. Osage Indians born after the 1906 Act roll closed do not acquire the usual rights of persons born into an Indian tribe to share in distributions of tribal property. Rather, persons on the 1906 Act roll have a restricted tenancy in common, called an Osage headright, which then passes to their heirs, devisees, and assigns. Most persons of Osage Indian ancestry own no headrights, and thus receive no tribal income. Some persons own more than one headright, or own fractional shares of headrights, and some headrights are owned by non-Osages.
>
> . . . Adult Osages may make testamentary dispositions by will, or by an inter vivos trust that operates as a will substitute. All such wills and trusts are subject to the Secretary's approval, and beneficiaries under them who are non-Osages may not take more than a life estate. If an Osage owner dies intestate, the headright passes only to the heirs of Osage blood, except that a non-Osage heir, as determined by Oklahoma state law, may take a life estate.

> . . . .
> The 1906 Act applied most Oklahoma laws of descent, will, partition, and guardianship to the trust and restricted property of Osage Indians. Wills are subject to the approval of the Secretary of the Interior, and will contests must be heard in federal court. The Oklahoma courts have other probate jurisdiction and jurisdiction over guardianship, subject to federal statutory provisions.

COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 4.07[1][d][ii], at 303-08 (Nell Jessup Newton ed., 2012) (footnotes omitted). Decisions of the Superintendent, Osage Agency, BIA, in will contests may be appealed directly to the Secretary of the Interior. 25 C.F.R. § 17.14. If no notice of intention to appeal is given within 15 days, the superintendent's decision is final. Id. Once the Department has determined whether or not to approve the will, and any judicial challenges to the Department's determination have been concluded, the will goes to the Oklahoma state court system for probate.

In his amended complaint, Plaintiff identifies the following three claims:

Ground I: Failure to protect Plaintiff's property. Osage Nation Government's executive branch has failed to protect my mineral royalty interest, as heir to lineal decendants [sic] estates, by dening [sic] me administrative determination. They have violated due process of law, and Osage Nation Constitution, Article XV Natural Resources and Minerals, Section 4, Management of the Osage Mineral Estate.

Ground II: Osage Nation has violated due process clauses of Osage Constitution, and 5th [and] 14th Amendments to U.S. Const. by dening [sic] request for probate information, contesting law to decendants [sic] estates, threw [sic] redress of probate by dening [sic] me administrative determination, the executive branch (Osage Nation Congress) has put forth constitutional amendments for the general election 2014 that counterdict [sic] and deprive me of my inheritable property without due process of law.

Ground III: Federal defendants, Department of the Interior, Osage Nation Government, Secretary of the Interior, Ass't Secretary of the Interior, Indian Affairs, Bureau of Indian Affairs, Superintendent Osage Nation have violated [Plaintiff's] civil rights, by depriving him his request for the Secretary of the Interior to pay him his pro rata share as and adult member of the Osage Tribe of Indians in Oklahoma.

(Dkt. # 8 at 13-34).

**A. Motion to dismiss filed by Osage Nation Government**

Defendant Osage Nation Government filed a motion to dismiss (Dkt. # 33), arguing that Plaintiff's amended complaint fails to state a claim upon which relief may be granted. In response to the motion to dismiss, Plaintiff simply asks the Court to deny the motion to dismiss because Defendant Osage Nation Government did not deny his factual allegations. See Dkt. # 51 at 6. For the reasons discussed below, Defendant Osage Nation Government's motion to dismiss is granted.

**1. Violation of the Osage Nation Constitution**

Plaintiff claims that the circumstances alleged in his amended complaint show a violation of the Constitution of the Osage Nation. Federal district courts lack subject matter jurisdiction to hear purely intratribal disputes. See Kaw Nation ex rel. McCauley v. Lujan, 378 F.3d 1139, 1143 (10th Cir. 2004) ("A dispute over the meaning of tribal law does not 'arise under the Constitution, laws, or treaties of the United States,' as required by 28 U.S.C. §§ 1331 and 1362."); Wandrie-Harjo v. Chief-Boswell, No. CIV-11-171-F, 2011 WL 7807743, at *4 (W.D. Okla. Aug. 15, 2011) (unpublished)[2] (stating that "[j]urisdiction to resolve internal tribal disputes and to interpret tribal constitutions and laws lies with the Indian tribes and not the district courts"); see also Motah v. U.S., 402 F.2d 1, 2 (10th Cir. 1968) ("The action stems from an internal controversy among Indians over tribal government, a subject not within the jurisdiction of the court as a federal question.").

Plaintiff asserts that "by denying [sic] him administrative determination of all probated estate of descendants, [the Osage Nation] is in violation of Osage Nation Constitution Article XV Natural

---

[2]This and other unpublished opinions herein are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Resources and Minerals Section 4. Management of the Osage Nation Mineral Estate." That section of the Osage Nation Constitution provides, in part, that:

> The Mineral Estate of the Osage Reservation is reserved to the Osage Nation. The government of the Osage Nation shall have the perpetual obligation to ensure the preservation of the Osage Mineral Estate. The government shall further ensure that the rights of members of the Osage Nation to income derived from that Mineral Estate are protected.

Id.

The essence of Plaintiff's claim is that the Osage Nation tribal government has violated tribal law, as provided by the Constitution of the Osage Nation, in resolving his dispute. Because Plaintiff is a registered tribe member, this is an intratribal dispute that can only be resolved by interpreting tribal law and the constitution of the Osage Nation. Thus, the dispute is within the exclusive purview of the Osage Nation Tribal Court. Plaintiff does not assert a basis in fact or federal law that would enable this Court to hear this claim. Therefore, this claim does not arise "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and this Court does not have subject matter jurisdiction to hear it. For that reason, this claim is dismissed.

### 2.   Violation of the Fifth and Fourteenth Amendments to the U.S. Constitution

Plaintiff also alleges that the actions of Defendant Osage Nation Government violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978), the Supreme Court noted that "[a]s separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." Because of this, federal courts have held that tribal governments are not bound by either the Fifth Amendment, Talton v. Mayes, 163 U.S. 376, 384 (1896); see Santa Clara Pueblo, 436 U.S. at 56,

or the Fourteenth Amendment, id. at 56 n.7. Instead, "the tribal exercise of inherent power is constrained only by 'the supreme legislative authority of the United States.'" U.S. v. Shavanaux, 647 F.3d 993, 997 (10th Cir. 2011) (quoting Talton, 163 U.S. at 384). Because the government of the Osage Nation is not bound by either the Fifth or the Fourteenth Amendment, this claim fails to state a claim and is dismissed.

Plaintiff's claims could be liberally construed to set forth a claim under the Due Process Clause contained in the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302(a)(8) (providing that "[n]o Indian tribe in exercising powers of self-government shall . . . deprive any person of liberty or property without due process of law"). The Supreme Court has recognized that "a central purpose of the ICRA and in particular of Title I was to 'secur[e] for the American Indian the broad constitutional rights afforded to other Americans,' and thereby to 'protect individual Indians from arbitrary and unjust actions of tribal governments.'" Santa Clara Pueblo, 436 U.S. at 61. However, the Supreme Court held that Congress provided no private cause of action in federal court, other than habeas corpus, through which individuals could compel tribal governments to comply with the ICRA. Id. at 69. If an individual seeks to bring an action to enforce the provisions of the ICRA, the suit will be barred by tribal sovereign immunity. Id. at 59.

In its motion to dismiss, Defendant Osage Nation Government asserts its sovereign immunity. Therefore, to the extent Plaintiff asserts any claim based on the ICRA, it must be dismissed based on tribal sovereign immunity.

### 3. Violation of Oklahoma laws and Constitution

Plaintiff also claims that the actions of Defendant Osage Nation Government violate the laws and constitution of the state of Oklahoma. According to Cohen's Handbook of Federal Indian Law,

"[t]he foundational concepts of Indian law suggest that absent a controlling congressional statute, Indian tribes retain jurisdiction over persons, property, and events in Indian country . . . . Congress's plenary authority over Indian affairs and the tradition of tribal autonomy in Indian Country combine to preempt the operation of state law." COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 6.01[1], at 489  (Nell Jessup Newton ed., 2012) (footnotes omitted).  States may not "assert jurisdiction over the on-reservation activities of tribal members," absent an express statement by Congress, unless there are "exceptional circumstances." Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1180 n.10 (10th Cir. 2012) (quoting New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 331-332 (1983)).

While Plaintiff asserts that the Osage Nation acted in violation of the laws and constitution of the state of Oklahoma, absent some express authorization by Congress or an exceptional circumstance, the laws and constitution of the state of Oklahoma do not apply to the government of the Osage Nation.  There has not been an express authorization by Congress, and Plaintiff does not allege any facts suggesting that his case constitutes an exceptional circumstance.  Therefore, this claim fails to state a claim upon which relief may be granted and is dismissed.

### 4. Failure to allege sufficient facts to state a claim

In addition, Defendant Osage Nation Government, in its motion to dismiss, argues that the relief requested by Plaintiff "flows from several alleged Oklahoma state court probate matters.  A review of the Oklahoma District Court records for Osage County shows only one case, *In the Matter of the Estate of Charles B. St. John, Jr.*, Osage County District Court, Case Number PB-2013-17." (Dkt. # 33 at 2).  The docket sheet for that case shows that the final decree of distribution and discharge was filed August 18, 2014, and no appeal followed.  See http://www1.odcr.com/ detail?court=057-&casekey=057-PB++1300017. Nothing in the record suggests that Plaintiff is an

heir, legatee, or devisee of that estate, or that the notice provided in that case was insufficient. Defendant argues that any disagreement Plaintiff may have had with the distribution of the estate should have been appealed to the Oklahoma Supreme Court, as provided by Okla. Stat. tit. 58, § 724. See Dkt. # 33 at 2.  Furthermore, the information provided by Plaintiff with regard to the other estates discussed in the complaint is insufficient to state a claim.  Based on Plaintiff's allegations, his mother's death, more than eleven years before filing the complaint in this case, appears to have been the most recent of his direct lineal family members.  Plaintiff provides nothing but conclusory allegations that his family has headright interests and they have passed via either a probated will or the laws of intestate succession.  Without more, the complaint fails to state a claim upon which relief may be granted.

        **5.     Sovereign immunity**

Defendant Osage Nation Government seeks dismissal based on sovereign immunity.  In support of this claim, Defendant cites Kiowa Tribe of Okla. v. Mfg. Techs. Inc., 523 U.S. 751 (1998).  In Kiowa Tribe, the Supreme Court held that Indian nations are immune from suits by individuals and state agencies in any court including federal court, unless the United States Congress or the Indian nation itself waives sovereign immunity unequivocally. Id. at 755.  There has been no waiver in this case.  Therefore, the Court finds that Defendant Osage Nation Government is entitled to sovereign immunity.

For all of the reasons discussed above, the motion to dismiss filed by Defendant Osage Nation Government shall be granted.

**B.  Motion to dismiss filed by federal defendants**

The federal defendants also filed a motion to dismiss (Dkt. # 42), arguing that the amended complaint was filed in violation of the Federal Rules of Civil Procedure, fails to state a valid basis for the Court's jurisdiction, and fails to state a claim upon which relief may be granted. For the reasons set forth below, the Court agrees with the federal defendants and grants the motion to dismiss.

### 1. Lack of compliance with Federal Rules of Civil Procedure

First, the federal defendants argue that the amended complaint should be dismissed for failure to comply with Fed. R. Civ. P. 8. As asserted by the federal defendants, a plaintiff is obligated to "apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1371 (10th Cir. 1979). Although the amended complaint is lengthy, it nonetheless fails to specify actions or inactions by any defendant entitling him to relief. Plaintiff has failed to comply with Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason alone, the amended complaint is subject to dismissal.

### 2. Lack of valid basis for jurisdiction

Next, the federal defendants allege that Plaintiff fails to state a valid basis for this Court's jurisdiction. The Court agrees. As argued by defendants, the Federal Tort Claims Act (FTC), 28 U.S.C. § 1346(a),(b)(1), does not apply because Plaintiff does not allege a state-law based tort. Instead, he attempts to challenge alleged probates settled many years ago. The Court agrees that the FTC does not provide a basis for this Court's jurisdiction.

Also, the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-08, does not provide a basis for jurisdiction under the facts alleged in this case. The APA allows for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. The problem in this case is that Plaintiff has not identified a specific final agency action or inaction reviewable under the APA. For that reason, the amended complaint fails to state a claim upon which relief may be granted.

Similarly, for the reasons cited by the federal defendants and under the facts of this case, none of the other federal statutes cited by Plaintiff, including 28 U.S.C. §§ 1357 (providing a cause of action for recovery of damages for injuries resulting from protection or collection of any revenues or to enforce the right to vote), 2415(c) (providing for time for commencing actions brought by the United States), 1331 (providing for federal question jurisdiction), 1343(a) (providing jurisdiction in civil rights cases), supplies a basis for the Court's jurisdiction.

Furthermore, Plaintiff's reliance on Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), is misplaced. It is well-established that "a claim against a public official in his official capacity operates as a claim against the United States or against the official's employer and these entities are immune from Bivens claims. Gowadia v. Stearns, 596 F. App'x 667, 670-71 (10th Cir. 2014) (unpublished). In this case, Plaintiff sues agencies of the United States. Those entities are immune from Bivens claims.

**3. Failure to state a claim upon which relief may be granted**

Lastly, the Court agrees with the federal defendants that the amended complaint fails to state a claim upon which relief may be granted. Plaintiff complains that he has not received the share of his immediate family's headrights to which he believes he is entitled. However, if Plaintiff's mother

passed Osage headrights via a will that was approved for probate by the Secretary of the Interior, and omitted Plaintiff as a devisee, then Plaintiff had to contest the Secretary's decision prior to submission of the will to Osage County District Court for probate. See Crawley v. U.S. ex rel. Lujan, 977 F.2d 1409, 1411 (10th Cir. 1992) (affirming district court's dismissal of appeal of Secretary of the Interior's decision modifying and approving the last will and testament of an Osage Indian). Plaintiff simply waited too long to raise such a challenge. Similarly, if Plaintiff's mother's estate was otherwise passed via will or intestate succession in the Oklahoma state courts and Plaintiff was omitted as a devisee, Plaintiff was obligated to contest the probate as provided under Oklahoma law in state court, not in federal court. The amended complaint fails to state a claim upon which relief may be granted and shall be dismissed under Fed. R. Civ. P. 12(b)(6).

## C. Motion to amend is denied as futile

On July 23, 2015, Plaintiff filed a motion to amend (Dkt. # 52) and attached his proposed amended complaint. He claims that "his mother told him that headrights where [sic] illegally abtained [sic], and he should contest all wills of decendants [sic]."[3] Id. at 13. As discussed by Plaintiff in his response to the federal defendants' motion to dismiss, see Dkt. # 51, he seeks leave to file another amended complaint in an effort to cure the deficiencies identified by the federal defendants in their motion to dismiss. However, contrary to Plaintiff's argument, the proposed amendments do not cure the deficiencies.

---

[3]Plaintiff fails to identify any illegality associated with the passing of his family's alleged headrights. In addition, as stated herein, any challenge to the admission of wills to probate had to be made in compliance with governing law. It appears that Plaintiff simply waited too long to attempt to contest distributions of his family members' estates.

First, Plaintiff states "[t]his is a Bivens action" and, as to the federal defendants, Plaintiff adds the names of officials in charge of the various agencies, including, Sally Jewell, Secretary of the Interior; Mike Conner, Assistant Secretary of the Interior; Kevin Washburn, Chairman Bureau of Indian Affairs; and Robin Phillips, Superintendent Osage Agency. See Dkt. # 52 at 6, 10. However, as asserted by the federal defendants in response to the motion to amend, see Dkt. # 53, liability under Bivens may be imposed upon a defendant only if he is personally responsible for the constitutional violation alleged in the complaint. Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir. 2013). Nowhere in the proposed amended complaint does Plaintiff identify a constitutional violation personally perpetrated by Secretary of the Interior Sally Jewell, Assistant Secretary of the Interior Mike Conner, Bureau of Indian Affairs Chairman Kevin Washburn, or Superintendent of the Osage Agency Robin Phillips. It is clear Plaintiff seeks to hold the named federal defendants liable based on their roles as supervisors under the doctrine of respondeat superior. However, respondeat superior liability is not available in a Bivens suit. Pahls, 718 F.3d at 1225. Also, to the extent Plaintiff attempts to sue the named federal defendants in their official capacities, they are immune from Bivens claims. Gowadia, 596 F. App'x at 670-71. For those reasons and under the facts of this case, simply adding the names of the agency heads is insufficient to state a claim under Bivens.

Plaintiff also seeks to add the following new defendants: Geoffrey Standingbear, Principal Chief of the Osage Nation Tribe of Indians; Raymond Redcorn, Assistant Chief of the Osage Nation Tribe of Indians; the Osage Minerals Council, individual members holding seats one through eight; and John D. Red Eagle, former Principal Chief of the Osage Nation Tribe of Indians. Again, however, Plaintiff seeks to hold these defendants liable based on their roles as supervisors under the doctrine of respondeat superior. He fails to allege how any of these defendants personally

13

perpetrated a constitutional violation. In addition, to the extent Plaintiff proposes to sue these new defendants in their official capacity as officials of the Osage Nation Tribe of Indians, they are entitled to tribal sovereign immunity. Sanders v. Anoatubby, No. 15-6116, 2015 WL 7423038, *2 (10th Cir. Nov. 23, 2015) (unpublished).

In addition to adding new defendants, Plaintiff identifies two claims in his proposed amended complaint:

Count 1:   Breach of trust, 1906 Act, failure to protect.

Count 2:   Violation of civil rights, failure to protect.

(Dkt. # 52 at 15). However, neither of those counts states a claim. In Fletcher v. United States, 730 F.3d 1206 (10th Cir. 2013), the Tenth Circuit Court of Appeals recognized that "[o]ver the years, both Congress and this court have repeatedly recognized that . . . the 1906 Act created a trust relationship between the government and individual headright owners. Fletcher, 730 F.3d at 1209; see also Quarles v. U.S. ex rel. Bureau of Indian Affairs, 2005 WL 2789211, *12 (N.D. Okla. Sept. 28, 2005) (stating that the "Indian Trust doctrine may be invoked only on behalf of the Osage Indians who own interest in the subsurface mineral estate in Osage County"). Furthermore, based on 25 U.S.C. § 4011, individual headright owners may demand that the government provide an accounting. Fletcher, 730 F.3d at 1209. In this case, Plaintiff's problem is that he is not an individual headright owner. As a result, the government has no duty to provide an accounting to Plaintiff and has not breached any trust relationship with him. Therefore, Plaintiff's proposed Count 1 fails to state a claim upon which relief may be granted. As to proposed Count 2, the Court has determined above that Plaintiff fails to state a violation of a constitutional right.

Because Plaintiff's proposed amended complaint would be dismissed for failure to state a claim upon which relief may be granted, it would be futile to allow Plaintiff to file the proposed amended complaint. For that reason, his motion to amend shall be denied.

**D.  First "prior occasion" under 28 U.S.C. § 1915(g)**

Plaintiff has been granted leave to proceed in forma pauperis. See Dkt. # 12. In addition, his amended complaint fails to state a claim upon which relief may be granted and is dismissed for that reason. This dismissal shall count as Plaintiff's first "prior occasion" under 1915(g) (providing that "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury").

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The motion to dismiss filed by Defendant Osage Nation Government (Dkt. # 33) is **granted**.
2. The motion to dismiss filed by the federal defendants (Dkt. # 42) is **granted**.
3. Plaintiff's motion to amend (Dkt. # 52) is **denied**.
4. The Clerk is directed to **flag** this dismissal as Plaintiff's first "prior occasion" for purposes of 28 U.S.C. § 1915(g).
5. This is a final Order terminating this action.

**DATED** this 28th day December, 2015.

James H. Payne
United States District Judge
Northern District of Oklahoma